**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

STEPHEN BOHR, Individually and for others similarly situated,

Plaintiff,

v.

WEST SHORE ADVANCED LIFE SUPPORT SERVICES, INC., d/b/a GEISINGER EMERGENCY MEDICAL SERVICES,

Defendant.

No. 4:25-CV-01103

(Chief Judge Brann)

**MEMORANDUM OPINION**

**JULY 31, 2026**

Former paramedic Stephen Bohr ("Bohr"), acting on behalf of all hourly Geisinger Emergency Medical Services ("Geisinger") employees who worked in, or were based out of, Pennsylvania during the past 3 years, filed this putative class action against Geisinger.[1] In the suit, Bohr alleged that Geisinger did not pay him and the other hourly employees at least one-and-a-half times their regular rates of pay for all hours they worked in excess of forty in a workweek.[2] That is, the company did not compensate them at the required premium overtime rate under state and federal law. Instead, he alleges that it paid them "non-discretionary bonuses and shift differentials that it fail[ed] to include in these employees' regular rates of pay for

[1] *See* Doc. 1.
[2] *Id.*

overtime purposes," what he refers to as a bonus pay scheme.[3] He claims that this scheme violated the Fair Labor Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act, and the Pennsylvania Wage Payment and Collection Law.

Now, Bohr moves for conditional certification of his proposed class and for the approval of court-authored notice. Because his filings satisfy the modest factual showing required, Bohr's motion for conditional certification is granted in part and the class will be conditionally certified with modest clarifications. However, the relief he seeks regarding notice will be denied without prejudice.

## I. BACKGROUND

On June 18, 2025, Bohr initiated this punitive class action lawsuit against West Shore Advanced Support Services, Inc., which does business as Geisinger Emergency Medical Services.[4] The suit was brought on behalf of himself and similarly situated hourly employees of Geisinger who were paid a bonus not included in their regular rate of pay during the last three years.[5] It alleged that Geisinger unlawfully failed to pay the required rate of overtime wages for hours worked in excess of forty hours per workweek.[6] Instead, Bohr says that they were paid under an unlawful bonus pay scheme that included "discretionary bonuses,

---

3 *Id.* ¶ 5.
4 *See id.*
5 *Id.* ¶ 15.
6 *Id.* ¶ 86.

including sign on bonuses, retention bonuses, shift bonuses, as well as shift differentials."[7]

In December 2025, Bohr filed the present motion for conditional class certification and court-authorized notice.[8] In support of this motion, Bohr filled a brief [9] that attached two declarations as exhibits: the first, by him[10] and the second by a former Emergency Medical Technician and Paramedic who was also employed by Geisinger, Jennifer Varvil.[11] These declarations, detail the payment structure for their overtime work and how they believe that all hourly employees of Geisinger received the same type of additional compensation for overtime work.[12] Specifically, both explained their employment at Geisinger and how their overtime rate did not include a base pay rate change for overtime hours, but would only include shift differentials or non-discretionary bonuses.[13]

According to both, "Geisinger had a policy of providing compensation in the form of shift differentials and the non-discretionary bonuses. . . . But to my knowledge, Geisinger did not include shift differentials and the non-discretionary bonuses in calculating the regular rate of pay to calculate [] overtime."[14] This meant

---

7 *Id.* ¶ 38.
8 Doc. 25.
9 Doc. 26.
10 Doc. 26, Ex. 2.
11 Doc. 26, Ex. 3.
12 *See id.*; Doc. 26, Ex. 2.
13 *See* Doc. 26, Ex. 2 ¶ 7; Doc. 26, Ex. 3 ¶ 7.
14 *See* Doc. 26, Ex. 2 ¶¶ 6-7; Doc. 26, Ex. 3 ¶¶ 6-7.

that their hourly rate would stay the same for hours worked up through the forty hour workweek and after it, even when shift differentials and bouses were included in paychecks.[15] At root, they set forth that their "overtime rate of pay did not appear to include 1.5x my base hourly rate" along with any bonuses or differentials.[16]

With the filing of Bohr's reply brief in support of his motion for conditional certification and court-authorized notice, the motion has been fully briefed.[17] Accordingly, the motion is ripe for disposition. I will address each tenant of the motion in turn, beginning with a determination of whether conditional certification is appropriate and then discuss the notice documents produced by Plaintiff.

## II. CONDITIONAL CERTIFICATION

### A. Law

Section 16(b) of the FLSA permits employees to bring a private right of action for violations of the statute "[o]n behalf of . . . themselves and other employees similarly situated."[18] To maintain a collective action under the FLSA, however, a plaintiff must satisfy two requirements. First, the plaintiff must establish that the collective action group is "similarly situated."[19] Second, "similarly situated" group members must affirmatively opt into the suit through filing a written notice of

---

15 *See* Doc. 26, Ex. 2 ¶ 7; Doc. 26, Ex. 3 ¶ 7.
16 *See* Doc. 26, Ex. 2 ¶ 7; Doc. 26, Ex. 3 ¶ 7.
17 *See* Doc. 26; Doc. 34; Doc. 36.
18 29 U.S.C. § 216(b).
19 *Stone v. Troy Construction, LLC*, 2015 WL 7736827, at *2 (M.D. Pa. Dec. 1, 2015) (Munley, J.).

consent with the court.[20] It is this latter requirement of voluntary entry that clearly distinguishes the FLSA conditional certification process from the traditional class certification framework of Federal Rule of Civil Procedure 23.[21]

While not defined in Section 16(b) of the FLSA, district courts within the United States Court of Appeals for the Third Circuit have developed a two-step procedure to determine whether potential members of the alleged collective group are "similarly situated."[22] These steps proceed as follows:

> First, the court must decide whether a class should be certified conditionally in order to give notice to the potential class members and to allow for pretrial discovery regarding the individual claims. After the class has been conditionally certified, notice and opportunity to opt in has been given to the potential plaintiffs, and discovery has been conducted, the court may then be asked to reconsider the conditional class certification to determine whether the "similarly situated" standard has been met.[23]

A court is confronted with the second step above in a motion for decertification following the completion of discovery. Aided by the benefit of a complete factual record, this step at an advanced stage of litigation entails a higher burden of proof than the initial, conditional certification.[24]

At an early stage of litigation, however, a court is concerned with the first step of the "similarly situated" analysis—whether a class should be certified

---

[20] *Id.*
[21] *Craig v. Rite Aid Corp.*, 2009 WL 4723286, at *2 (M.D. Pa. Dec. 9, 2009) (Jones, J.).
[22] *Id.*
[23] *Id.* (internal quotation marks and citations omitted).
[24] *Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527, 534 (3d Cir. 2012).

conditionally to give notice to the potential class members and allow for pretrial discovery regarding the individual claims. Unlike with the later inquiry, a plaintiff's burden for conditional certification is "relatively light" and requires only a "modest factual showing."[25] To satisfy this "extremely lenient standard,"[26] a plaintiff need only produce "some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees."[27] This language makes clear that, at the first step, "courts do not review the underlying merits of the action."[28]

As a result of the modest burden at this stage of proceedings, motions for conditional certification are generally successful.[29] This light burden and the ensuing high rate of success at the conditional certification stage result because the district court bears an insignificant risk of error by granting the motion. My former colleague, the Honorable John E. Jones III, writing for this Court, aptly described the justification for this modest burden as follows:

---

25 *Craig*, 2009 WL 4723286 at *2.

26 *Chung v. Wyndham Vacation Resorts, Inc.*, 2014 WL 4437638, at *2 (M.D. Pa. Sept. 9, 2014) (Mariani, J.).

27 *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66 (2013).

28 *Sloane v. Gulf Interstate Field Servs., Inc.*, No. 4:16-CV-01571, 2017 WL 1105236, at *6 (M.D. Pa. Mar. 24, 2017).

29 *Craig*, 2009 WL 4723286 at *2 (citing *Woodard v. FedEx Freight East, Inc.*, 250 F.R.D. 178, 191 (M.D. Pa. 2008) (Vanaskie, J.)); *see also Cambridge v. Sheetz, Inc.*, No. 1:17-CV-1649, 2018 WL 10467411, at *2 (M.D. Pa. Feb. 13, 2018); *Hart v. Gov't Emps. Ins. Co.*, No. 4:21-CV-00859, 2022 WL 414241, at *3 (M.D. Pa. Feb. 10, 2022); *Harris v. Rebelz Club, LLC*, No. 4:22-CV-00111, 2022 WL 2792200, at *3 (M.D. Pa. July 15, 2022).

> The burden in this preliminary certification is light because the risk of error is insignificant: should further discovery reveal that the named positions, or corresponding claims, are not substantially similar[,] the defendants will challenge the certification and the court will have the opportunity to deny final certification.[30]

Furthermore, the Third Circuit has explained that conditional certification of an FLSA collective action claim is not really a certification at all, but rather an exercise of the district court's discretionary power to facilitate the sending of notice to potential class members.[31]

**B. Analysis**

As an initial matter, the Court believes it necessary to provide one small edit for clarification to the conditional certification proposed by Bohr. It is clear based on the alleged FLSA violation, that in order to be similarly situated to the Plaintiff, class members would have needed to have worked overtime hours — or over forty hours a workweek — during the relevant period.[32] After reviewing Plaintiff's complaint and the briefing surrounding this motion, this fact appears to be an implicit assumption of both parties. Nevertheless, it would be prudent, at this point, to make

30 *Craig*, 2009 WL 4723286 at *2.

31 *Halle v. West Penn Allegheny Health System Inc.*, 842 F.3d 215, 224 (3d Cir. 2016).

32 Plaintiff's overarching argument in this case is that he and the other hourly employees were not paid one-and-a-half times their hourly rate for overtime work. This makes it impossible for the other hourly employees to logically be similarly situated to Plaintiff if they never worked over forty hours a week and, as a result, were never subject to an overtime payment policy.

that assumption explicit and include it in the description of the collective that will be considered for conditional certification.[33]

I do not believe this limitation of the collective will limit the potential pool of class members; I do believe that it will assist the parties and the Court in weeding out a few potential opt-ins who may better understand who is eligible to be a member of this lawsuit with this added clarification. Therefore, in my consideration of conditional certification, I have amended the description of Plaintiff's proposed collective to read as follows: "All hourly Geisinger employees who worked in Pennsylvania for more than forty hours in any workweek while employed there and were paid a bonus and/or shift differential from June 18, 2022, through the present."[34]

---

33 Additionally, this fact should be memorialized in any notice sent out to potential opt-in plaintiffs. Geisinger did this in a sufficient and effective way, in the Court's mind, by including the sentence "You worked more than 40 hours in a workweek" in section 3 of their proposed notice discussed below. However, this insertion could be further clarified by adding the phrase "when you worked at Geisinger during this period" to the end of that additional sentence. This would lead it to read "You worked more than 40 hours in a workweek when you worked at Geisinger during this period."

34 *See* Doc. 26, at 8. I have also amended the collective description to explicitly state that only those who worked in Pennsylvania are part of the proposed putative class. This is what is stated in the complaint. *See* Doc. 1 ¶ 16. Given that both declarations that were submitted with this motion are from employees based in Pennsylvania, *see* Doc 26, Exs. 2-3, and the statement in the complaint, this appears to be another implicit assumption that Plaintiff makes regarding who would be part of the putative class. But to the extent that Plaintiff is truly arguing that the collective should include those who worked for Geisinger in a different state, the motion related to this aspect of conditional certification is denied. This is because there is no evidence that these employees were subject to the same overtime payment policy that Plaintiff was, and any assertions by the declarants on this point would be pure speculation without more information. Therefore, in addition to the hours worked clarification, I have also amended the proposed collective description to make explicit that only those who worked at Geisinger in the Commonwealth of Pennsylvania are eligible for the class.

I will now proceed to the question of whether that proposed class should be conditionally certified. I have concluded that the evidence and allegations are sufficient to meet Bohr's "modest factual showing" that a nexus exists "between the manner in which [Geisinger's] alleged policy affected ... [him] and the manner in which it affected the proposed collective action members."[35]

Bohr and Varvil both attest that all of Geisinger's hourly employees were paid under the same additional compensation scheme to avoid a lawful overtime rate.[36] They both claim that this scheme led to them being paid in the form of shift differentials and non-discretionary bonuses that did not equate to an overtime hourly rate of one-and-a-half times their base hourly rate.[37] This led to them being paid an identical hourly rate for time worked up to and over forty hours a week.[38] Based on their experience and discussions with former coworkers, they state that other hourly employees experienced a similar overtime compensation structure.[39]

These declarations and averments therefore establish that, as a general matter, Bohr and other hourly workers who were based in Pennsylvania and were eligible for overtime pay were not compensated at a rate of one-and-a-half times their base hourly rate for overtime hours worked in excess of the forty-hour work week. This

---

35 *Halle*, 842 F.3d at 224 (internal quotation marks omitted).
36 Doc. 26, Ex. 2 ¶¶ 7-8; Doc. 26, Ex. 3 ¶¶ 7-8.
37 *See* Doc. 26, Ex. 2 ¶¶ 6-8; Doc. 26, Ex. 3 ¶¶ 6-8.
38 Doc. 26, Ex. 2 ¶ 7; Doc. 26, Ex. 3 ¶ 7.
39 Doc. 26, Ex. 2 ¶ 8; Doc. 26, Ex. 3 ¶ 8.

is sufficient to demonstrate, at this stage, that Bohr is similarly situated to these other putative class members.[40]

Geisinger presents two arguments in opposition to the conditional certification motion. First, it claims that Bohr's argument that the hourly employees identified in the complaint are similarly situated is based on pure speculation.[41] They essentially say that the Plaintiff's declarations are not specific enough and they do not pertain to a clearly defined group.[42] The Court disagrees. District courts within the Third Circuit have previously found that declarations with a similar level of depth were sufficient to support a grant of conditional certification.[43] Additionally, "Being similarly situated does not mean simply sharing a common status. . . . Rather, it means that one is subjected to some common employer practice."[44] The Court believes that because "job title alone is insufficient to establish the exempt status of an employee" under FLSA,[45] job title is the sort of common status that does not lead

40 *See, e.g.*, *Thurlow v. Nat'l Inspection Servs., LLC*, No. 2:24-CV-01135, 2025 WL 408352, at *3 (W.D. Pa. Feb. 6, 2025); *Fischer v. Fed. Express Corp.*, 509 F. Supp. 3d 275, 283 (E.D. Pa. 2020) ("[t]his burden can be met when the plaintiff shows that they and other similarly situated employees performed the same job duties, were paid in the same manner, and advance claims based on the same allegedly illegal activities."), *aff'd*, 42 F.4th 366 (3d Cir. 2022).

41 *See* Doc. 34, at 14-22.

42 *Id.* at 20-21.

43 *See, e.g.*, *Kaynaroglu v. Avis Budget Grp., Inc.*, 773 F. Supp. 3d 169 (D.N.J. 2025); *Tompkins v. Farmers Ins. Exch.*, No. 5:14-CV-3737, 2015 WL 4931605, at *3 (E.D. Pa. Aug. 18, 2015).

44 *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 538 (3d Cir. 2012).

45 *Babin v. Stantec, Inc.*, No. 09-1160, 2010 WL 3363920, at *4 (E.D. Pa. Aug. 25, 2010) (quoting 29 C.F.R. § 541.2) (internal quotation marks omitted).

to a determinative finding of similar situations.[46] Instead, the focus must remain on whether those identified are subject to a common employer practice.[47]

Plaintiff has provided sufficient evidence, beyond mere speculation,[48] that all hourly employees based in Pennsylvania—who were eligible for overtime pay and were paid bonuses and shift differentials—were subject to a common overtime payment structure that if proven would violate the FLSA. As this is the sole requirement to allow for the granting of conditional certification,[49] the Court will not require more at this stage of the litigation.[50]

Next, Geisinger argues that Plaintiff's declarations are insufficient because they are riddled with language that cabins the declarant's assertions, such as the phrases "it is my understanding" and "I believe that."[51] The argument proceeds by claiming that Plaintiffs do not explain how they became aware of how other

---

46 The Court acknowledges that the only example of a common status given in *Zavala* is immigration status. *See* 691 F.3d at 538. But this single example was assuredly not intended to be a comprehensive list of the things that are common statuses. The Court believes that even if the two examples would appear to be a juxtaposition when placed next to each other, based on the entirety of the conditional certification standard, it makes sense that job title would also qualify as a common status.

47 *Zavala*, 691 F.3d at 538.

48 In the form of two declarations and multiple pay stubs. *See* Doc. 26, Exs. 2-5.

49 *See Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011).

50 The Court also is convinced by the argument that factual differences in the pay structures of the various job titles of employees that may be eligible for this class is not relevant in the determination of whether to grant conditional certification. *See Hart v. Gov't Emps. Ins. Co.*, No. 4:21-CV-00859, 2022 WL 414241, at *4 (M.D. Pa. Feb. 10, 2022) ("factual variations between [employees] including the hours worked, workload, location, and supervisors' potential knowledge of their hours worked . . . go to the merits of the case, rather than the question of whether conditional certification should be granted, and are not relevant at this time" ).

51 *See* Doc. 34, at 19.

employees were paid.[52] This contention ignores that both declarations state that their knowledge arose from their "discussions with former coworkers, [their] experience, and [their] familiarity with the pay practices of Geisinger."[53] Again, all that is required at this stage is a "modest factual showing" that a nexus exists "between the manner in which [Geisinger's] alleged policy affected ... [him] and the manner in which it affected the proposed collective action members."[54] The Court can find no binding case law to support the notion that more than these modest statements are necessary at this stage.[55] Therefore, Court believes that these statements in the two declarations satisfy the modest factual showing.

Geisinger also argues that if the conditional certification is granted, the collective should be limited to those who worked as paramedics for Geisinger.[56]

---

52 *See id.* at 17.

53 Doc. 26, Ex. 2 ¶ 8; Doc. 26, Ex. 3 ¶ 8.

54 *Halle v. West Penn Allegheny Health System Inc.*, 842 F.3d 215, 224 (3d Cir. 2016) (internal quotation marks omitted).

55 None of the cases that Geisinger cites to support the notion that this cabining language defeats Plaintiff's motion is binding on this Court. *See* Doc. 34, at 17-18. All of the cases cited by Geisinger included more general declarations than the ones present in this case. This is not the case where there is no uniform policy alleged, or where the policy is extremely generally, or where the contours of those it applies to are in doubt. Those three scenarios succinctly summarize the cases relied on by Geisinger. The policy is plain in the declarations and complaint: hourly employees were not paid the required hourly rate for overtime hours worked. Further, the class is sufficiently clear and similarly situated to Plaintiff: hourly employees of Geisinger who worked in Pennsylvania, were eligible for overtime pay, and were paid shift differentials or bonuses that were not included in their regular rate of pay. This clarity allows the Court to confidently say that the present matter is distinct from the cases cited in this section of Geisinger's brief. Further, there are cases in this Circuit that have found that a class was similarly situated despite declarations use of the phrase "I believe." *See Tompkins v. Farmers Ins. Exch.*, No. 5:14-CV-3737, 2015 WL 4931605, at *3 (E.D. Pa. Aug. 18, 2015).

56 *See* Doc. 34, at 22-24.

Because I have found that, at this stage, Bohr is similarly situated to other putative class members as the Court described them, I will not restrict or limit the class any further.[57]

Therefore, with the previously referenced clarification regarding hours worked in a workweek and the location of the employees,[58] Bohr has met the "modest factual showing necessary to warrant conditionally certifying their action."[59] That is, he has "provided sufficient evidence to show that it is beyond mere speculation that there may be collective members … who will advance similar claims."[60] As a result, the collective will be conditionally certified pursuant to 29 U.S.C. § 216(b).

57 The Court disagrees with Geisinger's contention that Bohr and Varvil could only have knowledge of paramedics at Geisinger. *See* Doc. 34, at 24. For starters, Ms. Varvil also served as an emergency medical technician, a job that Geisinger ardently argues is distinct from that of a paramedic. *See* Doc. 34, at 15. It also appears entirely possible to the Court that the declarants had conversations with Geisinger employees with different job titles about their overtime pay. The implied notion by Geisinger that paramedics only have knowledge of paramedics in a hospital system is illogical for the simple reason that people within organizations speak to one another. That is exactly what the declarants have said they did. Further, despite Geisinger's statement that it has submitted evidence regarding the variety of hourly employees it employs, it has presented no evidence to show that those hourly employees are subject to a different overtime payment policy. *See* Doc. 34, at 22. While Bohr's evidence that his is subject subject to the same scheme as other hourly employees is only in the form of two declarations, what those declarations say is sufficient in the Court's mind to support a finding, at this stage of the litigation that Bohr is similarly situated to the hourly employees of Geisinger who worked in Pennsylvania, were eligible for overtime pay, and received bonuses or shift differentials.

58 These clarifications are reflected in the description of the certified collective at the end of this opinion and in the order that will follow its filing.

59 *See Harris v. Rebelz Club, LLC*, No. 4:22-CV-00111, 2022 WL 2792200, at *5 (M.D. Pa. July 15, 2022).

60 *De Alvarenga Barbosa v. Kellermeyer Bergensons Servs., LLC*, No. CV 24-5633, 2025 WL 2983157, at *3 (E.D. Pa. Oct. 22, 2025).

## III. NOTICE

"Once conditional certification is granted, the court may approve notice and consent forms to be sent to putative class members which advise them of their opportunity to participate in the collective action."[61] As a part of the same motion, Bohr also asks the Court to approve his proposed notice and consent forms for opt-in class members,[62] authorize Plaintiff's counsel to send the notices to potential class member "via mail, email, and text message, along with an identical reminder notice," "authorize a sixty-day notice period for Putative Collective Members to join the case," and "order Defendant to produce a complete and up-to-date list of the names, job titles, last-known mailing addresses, phone numbers, email addresses, dates of employment, and locations worked for the Putative Collective Members within fourteen (14) days of the Court's order."[63] Geisinger has objected to various aspects of Bohr's proposed notice and the procedure to disseminate it. These objections include: (1) the method and manner of service, (2) the quantity of notices sent, and (3) the content of the form.[64]

In addition to raising numerous objections in its brief in opposition, Geisinger also submitted "its own proposed notice reflecting redlined changes" to Bohr's

---

61 *Surles v. Wexford Health Sources, Inc.*, No. 2:22CV1376, 2024 WL 885075, at *5 (W.D. Pa. Mar. 1, 2024) (citing *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 225 (3d Cir. 2016)).

62 *See* Doc. 26, Ex. 1.

63 *See* Doc. 25.

64 *See* Doc. 34, at 25-41.

proposed notice.[65] After a review of both proposed notices, it appears that there is not agreement on a single section of the notice.[66] Nevertheless, Geisinger has stated that they are "willing to meet and confer with Plaintiff as to a joint proposal for the Court's consideration."[67] To avoid needlessly invoking the ire of both parties by ruling on all objections at this time, the Court will instead take Geisinger up on its suggestion.

Therefore, the parties will be ordered to meet and confer on the issue of notice within the next twenty-one days.[68] By the end of this time frame, the parties shall submit an agreed-upon form of notice to the Court that is consistent with this Memorandum Opinion and its subsequent Order. That proposed order should be filed as an attachment to "a Joint Motion for Approval of Court Notice. . . . If there is an area of disagreement, such disagreement must be noted on the proposed notice, and an in-person status conference will be scheduled to resolve the disputed language."[69]

---

65 *See* Doc. 34, Ex. B.

66 *Compare* Doc. 26, Ex. 1, *with* Doc. 34, Ex. B.

67 *See* Doc. 34, at 25 n.5.

68 For cases that come to similar resolutions of the notice issue *see De Alvarenga Barbosa v. Kellermeyer Bergensons Servs., LLC*, No. CV 24-5633, 2025 WL 2983157, at *3-4 (E.D. Pa. Oct. 22, 2025); *Viscomi v. Diner*, No. CV 13-4720, 2016 WL 1255713, at *8 (E.D. Pa. Mar. 31, 2016).

69 *Kolasa v. BOS Sols., Inc.*, No. CV 17-1087, 2018 WL 3370675, at *7 (W.D. Pa. May 10, 2018), *report and recommendation adopted*, No. CV 17-1087, 2018 WL 3361269 (W.D. Pa. July 10, 2018).

"[I]t is well-established that specifics regarding the manner and implementation of notice are within the discretion of the district court."[70] So, to aid the parties in this forthcoming conference, I will provide rulings on several of the objections.

### A. Method

Geisinger's first objection relates to Bohr's request to disseminate a notice through three different methods: mail, email and text.[71] Instead, it would have the notices only be sent via first-class mail to avoid a "bombardment of notice."[72] As Plaintiff correctly points out courts in this circuit and around the country routinely approve notice via email and text message.[73] The reasoning for this is quite simple; "it is appropriate in the modern digital age to distribute notice by mail, email, and text, because although people frequently move and change addresses, they typically retain the same email addresses and phone numbers."[74]

I am unconvinced by the non-binding cases proffered by the Defendant and believe it is appropriate to allow for the dissemination of a notice via first class mail, email, and text once that notice is approved by the Court.

---

70 *Weinmann v. Cont. Land Staff, LLC*, No. 2:22-CV-01140, 2023 WL 3881394, at *6 (W.D. Pa. June 8, 2023) (citing *Sperling v. Hoffman-La-Roche Inc.*, 862 F.2d 439, 447 (3d Cir. 1988)).

71 *See* Doc. 34 at 26-29.

72 *Id.* at 26.

73 *See Surles v. Wexford Health Sources, Inc.*, No. 2:22CV1376, 2024 WL 885075, at *6 (W.D. Pa. Mar. 1, 2024) (collecting cases in this circuit).

74 *Wintjen v. Denny's, Inc.*, No. 2:19-CV-00069, 2021 WL 5370047, at *19 (W.D. Pa. Nov. 18, 2021) (internal citation and quotation marks omitted).

**B. Quantity**

Geisinger also objects to the reminder notice by Plaintiff and argues that the original notice should be the only communication to potential opt-ins.[75] The Court does not believe that a single reminder will be redundant or somehow demonstrate "improper judicial encouragement to participate."[76] "Rather than being redundant, a reminder letter gives notice to putative plaintiffs who do not receive, open, or view the initial letter; it also helps putative plaintiffs who misplace or forget about the initial letter."[77] Accordingly, Plaintiff will be permitted to send an identical version of the notice that is eventually approved by the Court halfway through the notice period.

**C. Defense**

Geisinger also argues that it "should be permitted to provide information regarding its defenses to ensure a potential opt-in plaintiff is fully informed as to Geisinger's position."[78] Their argument can be succinctly distilled into two sentences. "In the 'What Is This Lawsuit About?' section of Plaintiff's proposed

---

75 *See* Doc. 34, at 30.

76 *Id.* at 30. Geisinger "has not explained why the act of sending a reminder letter itself would put a judicial imprimatur on the lawsuit. The reminder letter is a neutral communication that does not recommend class participation and is reasonable to distribute." *Belt v. P.F. Chang's China Bistro, Inc.*, No. CV 18-3831, 2020 WL 3829026, at *9 (E.D. Pa. July 8, 2020).

77 *Belt*, 2020 WL 3829026, at *9 (quoting *Shoots v. iQor Holdings US Inc.*, No. 15-CV-563, 2015 WL 6150862, at *23 (D. Minn. Oct. 19, 2015)) (internal quotation marks omitted).

78 Doc. 34, at 32.

notice, 110 words are dedicated to Plaintiff's lawsuit and allegations. Geisinger's position is stated as a general denial of only 9 words."[79]

The Court agrees with Geisinger. In exercising their discretion to direct notice to potential opt-in plaintiffs, a district court must "be scrupulous to respect judicial neutrality" and "avoid even the appearance of judicial endorsement of the merits of the action."[80] To avoid any appearance of such improper judicial endorsement, the Court believes that it would be prudent to allow for a description of Defendant's case that is of a comparable size to Plaintiff's allegations in this section.[81]

The parties are encouraged to discuss the wording of the entire "What Is This Lawsuit About?" section, but the Court will require the joint proposed notice to include a more comprehensive recitation of Geisinger's defense than the current nine-word summary.

**D. Potential Additions on Purported Risks**

Finally, Geisinger proposes to add statements on purported risks, discovery obligations, and potential costs of litigation if it prevails in the litigation in the section of the notice titled "Effect of Joining or Not Joining the Lawsuit."[82] The

---

79 *Id.*

80 *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989).

81 To be clear, an exact match for the number of words in each is unnecessary. But the two should be of similar size, as they are in Geisinger's proposed notice. Additionally, the level of specificity in these recitations should not be changed from the current versions of the respective proposed notices. That is to say, no additional legalese is necessary in these recitations in further proposed notices.

82 *See* Doc. 34, at 36-38.

Court agrees with the vast majority of courts in this circuit in finding that the addition of such language " would only serve to have a chilling effect on potential participation and is unwarranted."[83] Therefore, sections on discovery obligations and potential costs of litigation will not be permitted in the notice and should not appear in the joint proposed notice that is filed with the Court.[84]

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Conditional Certification and Court-Authorized Notice is granted in part and denied in part. The motion is denied without prejudice as it pertains to the notice and dissemination plan. However, the motion is granted in part regarding conditional certification. The collective is conditionally certified pursuant to 29 U.S.C. § 216(b) as follows:

---

[83] *Bellan v. Cap. BlueCross*, 496 F. Supp. 3d 854, 860 (M.D. Pa. 2020); *see Harris v. Rebelz Club, LLC*, No. 4:22-CV-00111, 2022 WL 2792200, at *6 (M.D. Pa. July 15, 2022) ("the purpose and benefit of such a notice—i.e., allowing putative plaintiffs to make informed decision about whether to participate —is substantially outweighed by the risk of intimidating potential class members and chilling participation in the collective action) (internal quotation marks omitted); *Charles v. Progressions Behavioral Health Services, Inc.*, 2018 WL 4924169, at *5 (E.D. Pa. Oct. 9, 2018) ("[W]e reject Defendants' argument that the notice should include a warning that opt-in plaintiffs may be ultimately liable for Defendants' costs, as such a warning is unnecessarily intimidating and may chill otherwise valid participation in the collective."); *see also Guzman v. VLM*, 2007 WL 2994278, at *8 (E.D.N.Y. Oct. 11, 2007) (rejecting defendants' proposed notice provision that plaintiffs "will be responsible for costs" because the "possibility that such costs for absent class members would be other than de minimis" is "remote," and the notice "may have an in terrorem effect that is disproportionate to the actual likelihood that costs . . . will occur in any significant degree"); *Shoots v. iQor Holdings US Inc.*, No. 15-CV-563, 2015 WL 6150862, at *24 (D. Minn. Oct. 19, 2015) ("the threat of payment of defense costs to absent class members if iQor prevails is out of proportion to the risk; and … including such a warning could have a chilling effect on participation in the collective action.").

[84] The Court believes that all further disagreements over language in the notice can and should be negotiated between the parties.

> All hourly Geisinger employees who worked in Pennsylvania for more than forty hours in any workweek while employed there and were paid a bonus and/or shift differential from June 18, 2022, through the present.

The parties will be ordered to meet and confer and provide a proposed notice and dissemination plan to the Court by August 21, 2026.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge